IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| BONNEARIN SIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-725-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

    David J. Hollander
    Hollander, Lebenbaum & Gannicott
    1500 S.W. First Avenue, Suite 700
    Portland, Oregon 97201-5825

        Attorney for Plaintiff

    Katherine S. Somervell
    Bullivant Houser Bailey PC
    300 Pioneer Tower
    888 SW Fifth Avenue
    Portland, Oregon 97204-2089

        Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Bonnearin Sin, a retail sales clerk at Nordstrom, injured her head when she fell from a ladder at work. She made a claim for long-term disability benefits from Nordstrom through the claims administrator, defendant Metropolitan Life Insurance Company (MetLife). MetLife denied the claim. Before the court are the parties' cross-motions for summary judgment. For the following reasons, I grant plaintiff's motion for summary judgment (#33) in part, and deny MetLife's motion (#27). Additional proceedings are necessary to determine whether plaintiff qualifies for disability benefits.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ERISA actions, however, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (internal quotation and citation omitted). When a denial of benefits is challenged under ERISA's 29 U.S.C. § 1132(a)(1)(B), the court's review of the administrator's decision is de novo unless the plan unambiguously confers discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan. If the plan

confers discretion on the administrator, the court reviews the decision for an abuse of discretion and can only set aside the discretionary determination if it is arbitrary and capricious.[1]

The Ninth Circuit's recent decision teaches that the abuse of discretion standard applies even if the administrator has a conflict of interest. Abatie v. Alta Health & Life Ins., 458 F.3d 955, 967 (9th Cir. 2006) (en banc). Similarly, minor procedural irregularities do not shift the standard of review from abuse of discretion to de novo. Id. at 972. Rather, pursuant to Abatie, the court should use the abuse of discretion standard and "tailor its review to all the circumstances before it," id. at 968, rendering the conflict of interest and minor procedural irregularities as factors to consider.

However, the Ninth Circuit instructed that procedural irregularities may be "so substantial as to alter the standard of review" from abuse of discretion to de novo. Id. at 971. In order for the de novo standard to apply, the administrator must have engaged in violations of the procedural requirements of ERISA that "are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005) (as amended).

## BACKGROUND

Nordstrom's long-term disability plan ("Plan") defines disability as follows:

Disability means that, due to sickness, injury or other medical condition, you're unable to work and, as a direct result, experience a substantial loss of earnings.

You are considered to be disabled under this program if:

---

[1] The Ninth Circuit has noted that the standards of "arbitrary and capricious" and "abuse of discretion" differ in name only. Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1321 n.1 (9th Cir. 1995).

Page 3 - OPINION AND ORDER

- For the first 30 months of your disability, you are unable to earn more than 80% of your indexed pre-disability earnings performing each of the material duties or the essential functions of your own occupation for any employer in your local economy; and

- After the first 30 months of your disability, you are unable to earn more than 60% of your indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified–taking into account your training, education, experience and pre-disability earnings.

Decl. of Katharine Somervell in Supp. of Mot. for Summ. J. ("Somervell Decl."), Ex. C at 1.

The Plan Summary explains that MetLife, as the claims administrator, will "[g]ather information about your condition," and will assign a case specialist who "will work with you and your *physician* to review all circumstances related to your case and determine if benefits are available to you." Ex. C at 42 (emphasis in original).

Plaintiff's doctor, Dr. Oisin O'Neill, a Board certified neurosurgeon, supplied medical records of plaintiff's injury documenting that she suffered from mild headaches and symptoms consistent with post-concussion head injury syndrome. Plaintiff also provided the names of four other physicians who had treated her. MetLife contacted only Dr. O'Neill for medical records.

On January 28, 2004, MetLife sent plaintiff a form entitled *Authorization to Disclose Information About Me*. The letter accompanying the form directed plaintiff to "complete and fax this form to the number provided above. Also, provide a copy to your attending physician(s) for their records." Somervell Decl., Ex. A at CLM 0003. The letter explained that MetLife needed the form "completed to obtain pertinent medical information concerning your disability." Id.

On April 19, 2004, MetLife denied plaintiff's claim for benefits. Plaintiff appealed and, as part of its review of her appeal, MetLife asked Dr. Joseph Jares, a Board Certified neurologist

employed through Elite Physicians, to review plaintiff's medical records and offer his opinion on her injury. Dr. Jares opined that plaintiff's condition was based solely on symptomatic reports and that no objective tests or measures were available to review. Elite Physicians are providers of "evidence-based medical solutions for the insurance, managed care, legal, and medical industries." Decl. of David J. Hollander ("Hollander Decl."), Ex. 2 at 1.

On May 30, 2004, Dr. O'Neill submitted an Attending Physician's Statement to MetLife diagnosing plaintiff with post-concussion head injury syndrome, and opining that she could not work, but improvement was possible. He stated that plaintiff needed occupational therapy, job modification, and vocational rehabilitation.

On June 7, 2004, MetLife upheld its decision to deny plaintiff's claim for benefits, stating in part, "The consultant indicated that there was insufficient information to determine disability. The consultant indicated that Dr. O'Neill's most recent office notes did not address any neurological deficits and [you are] alleging disability based merely upon your subjective symptoms." Somervell Decl., Ex. A at CLM 0052. It also provided that it had "insufficient information to support an impairment that would prevent you from performing the duties of a retail salesperson." Id.

On November 26, 2004, plaintiff's counsel requested a complete copy of plaintiff's file from MetLife. On December 3, 2004, MetLife provided an incomplete copy of the file. MetLife contends the missing pages were inadvertently left out.

# DISCUSSION

Since the Plan provides that the plan administrator has discretion to construe and interpret the terms of the Plan, determine all questions as to eligibility, and make all determinations on a claim based on the terms of the Plan, and gives the plan administrator authority to delegate this discretion to the claims administrator, MetLife's decision would normally be reviewed under the abuse of discretion standard. However, plaintiff claims that a conflict of interest and procedural irregularities require a de novo evaluation of MetLife's decision.

I.  Conflict of Interest

Plaintiff claims that a conflict of interest exists because the claims administrator is also the payor; this is referred to as a structural conflict of interest. Abatie, 458 F.3d at 965. However, plaintiff admits that for the first 30 months, her benefits would be funded by the employer (not the claims administrator). Only after 30 months of disability benefits have been paid would future benefits be funded by an insurance policy issued by MetLife. Plaintiff was not eligible for benefits until February 2004, and MetLife issued its final decision on plaintiff's claim in June 2004, only four months into the disability period.

Although plaintiff asserts that in order to avoid paying benefits after the 30 months have lapsed, MetLife would have to initiate a separate proceeding to terminate benefits, and may still be required to pay benefits in the future–sufficient indicia of a conflict–in fact, after 30 months the definition of disability changes. Accordingly, MetLife would have to reassess whether plaintiff qualifies for benefits under the new definition requiring that she be unable to work at "any gainful occupation." Somervell Decl., Ex. B at 20.

Since MetLife has no economic interest in the outcome of plaintiff's claim, no conflict of interest exists. Accordingly, this factor does not affect the standard of review.

II.   Procedural Irregularities

   A.   Whether MetLife Properly Investigated the Claim

Plaintiff claims the administrator failed to properly investigate the claim, in line with Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1463-64 (9th Cir. 1997), in which the administrator was chided for "lacking necessary and easily obtainable information." Plaintiff also asserts that the Plan and administrator gave conflicting statements about whether plaintiff or the administrator was responsible for gathering evidence of plaintiff's disability. MetLife responds that plaintiff bears the burden of proving her disability and that, in both the Plan and in its communications with her, it repeatedly informed her she was to submit information to substantiate her claim of disability.

ERISA itself does not require administrators to seek out evidence. However, the statute is not the sole source prescribing the duties of the administrator. The terms of the Plan further explain how the process works.

In this case, the Plan states:

At your expense, you must provide documented proof of your Disability. Proof includes, but is not limited to:

   1.   The date your Disability started;
   2.   The cause of your Disability; and
   3.   The prognosis of your Disability.

You will be required to provide signed authorization for us to obtain and release medical and financial information, and any other items we may reasonably require in support of your Disability.

Somervell Decl., Ex. B at 33. While the language of the Plan is somewhat contradictory–making it the claimant's burden to provide documentation of her disability–it clearly places the burden of obtaining medical records on the administrator. Plaintiff must provide the signed authorization, but the language specifically provides the authorization is needed "for **us to obtain**" the medical information.

The Plan Summary further supports this reading of the Plan. MetLife will "gather information about your condition" and will assign a "Case Specialist" "who will work with you and your *physician* to review all circumstances related to your case and determine if benefits are available to you" and who will "gather information about your medical condition from your *physician*." Somervell Decl., Ex. C at 42-43 (emphasis in original). Moreover, "[o]nce you have filed your claim with MetLife, your Case Specialist contacts your *physician* to collect information regarding your medical condition. . . . Please let your physician know a Case Specialist will be calling and make sure you have the necessary 'release of information' forms on file with your physician." Id. at 43.[2]

MetLife sent the medical authorization form to plaintiff stating, "In order to continue with our review of your claim, we must have the attached . . . form completed to obtain pertinent medical information concerning your disability." Somervell Decl., Ex. A at CLM 0003. In addition, consistent with its statements in the Plan and Plan Summary, MetLife itself sought medical records from Dr. O'Neill. Finally, in her claim, plaintiff specifically listed the names of

---

[2]This language in the Plan Summary directly refutes MetLife's argument that the statement in the medical authorization form directing plaintiff to provide a copy of the form to her physicians for their records implies that MetLife expected plaintiff's doctors to forward relevant information to the company.

Page 8 - OPINION AND ORDER

the physicians she consulted after her injury, gave the phone numbers and addresses, and described their specialties. One glance at the list would indicate that the medical records from these physicians would be relevant to a finding of whether or not plaintiff was disabled. MetLife neglected to seek information from those physicians.

Even its initial letter to plaintiff following her claim, in which MetLife identified specific items plaintiff needed to submit, did not do much to clarify MetLife's expectations of plaintiff. The letter stated,

> To consider benefits for this claim, specific information will be needed from your physician. This information should include:
>
> 1. Copies of the two most recent:
>    - Office notes.
>    - Diagnostic test results.
>    - Operative reports and discharge summaries if applicable.
>    - Rehabilitation or therapy notes, if applicable.
> 2. Names and dosages of all current medications.
> 3. Functional abilities.
> 4. Expected return to work date.
>
> The requested information should be received by February 11, 2004. Failure to submit this information timely will result in closure of your claim.

Somervell Decl., Ex. A at CLM001. The letter does not ask plaintiff to submit copies of her medical records, and indicates that the information should come from plaintiff's physician. Again, in its Plan Summary, MetLife states that it will contact physicians to obtain the necessary medical records.

The conflicting statements in the Plan and the Plan Summary, as well as MetLife's conduct, demonstrate that MetLife committed a procedural error in not obtaining additional medical records. This is a factor that affects the standard of review.

Page 9 - OPINION AND ORDER

B.     Objective Finding Requirement

Plaintiff asserts that, by definition, her impairment is not one that is capable of diagnosis based on objective testing and other findings, yet MetLife denied her claim based on this lack of objective findings.  Plaintiff states that the Plan does not require that disability be objectively verified.

MetLife responds that it does not dispute that plaintiff suffers from post-concussion syndrome.  Rather, it disputes that her syndrome impeded her ability to perform her occupation as a retail sales clerk.  See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 877 (9th Cir. 2004) (the administrator determined that "although [plaintiff] had been diagnosed as having fibromyalgia, the record the administrator had did not show that she was unable to work because of it").  Here, the Plan requires that the claimant provide proof that "due to . . . accidental injury" plaintiff must be "unable to earn more than 80% of [her] Predisability Earnings . . . at [her] own occupation."  Somervell Decl., Ex. C at 1.  Other than Dr. O'Neill's conclusory assertion that plaintiff "could not work" there is little evidence in the record supporting any functional limitations plaintiff may have.  Dr. O'Neill, for example, opined that plaintiff could work "zero" hours per day, but did not state how many hours plaintiff could sit, stand or walk.  Somervelle Decl., Ex. A at CLM065.

MetLife may well have denied plaintiff's claim because there was little or no evidence that the post-concussion syndrome affected her ability to work.  However, the administrator's letter does not clearly state that conclusion.  The administrator wrote, "Based on our review of the information provided, we have determined that we have insufficient information to support an impairment that would prevent you from performing the duties of retail salesperson,"

Somervell Decl., Ex. A at CLM0052. This sentence could be read to mean either that the administrator denied benefits because plaintiff did not suffer from an impairment in the first place or that plaintiff submitted insufficient evidence of her functional limitations.

Furthermore, it appears likely that MetLife was at least influenced by the fact that plaintiff did not provide objective evidence proving her diagnosis. In the denial letter MetLife wrote, "[You are] alleging disability based primarily on your subjective symptoms." Id. at CLM0052. In addition, rather than quote Dr. Jares' conclusion that the "information on file is insufficient to determine whether or not Ms. Sin retains ability to work in her usual or any other occupation," the administrator quoted the lack of information concerning any neurological deficits, even though Dr. Jares also stated that no neurological deficits would be noted with the post-concussion syndrome. In other words, MetLife may have terminated benefits due to the lack of objective evidence substantiating the diagnosis, when the Plan does not require such evidence, and when the diagnosis is not capable of being objectively verified. See Maronde v. Sumco USA Group Long-Term Disability Plan, 322 F. Supp. 2d 1132, 1139 (D. Or. 2004) ("Unless a plan contains specific requirements for objective medical evidence, a plan administrator cannot deny a claim . . . simply because the plaintiff presents no such evidence.").

I find that MetLife's denial did not "set[] forth in a manner calculated to be understood by the claimant . . . [t]he specific reason or reasons for the denial." 29 C.F.R. § 2560.503-1(f). In addition, MetLife may have been influenced to deny the claim due to the lack of objective evidence supporting the diagnosis, when the Plan does not require such evidence in the first place, and when the diagnosis is not one that can be objectively verified. These errors affect the standard of review.

      C.      <u>Provide Information</u>

Plaintiff complains that the administrator failed to maintain and provide a copy of the letter from the administrator to Elite Physicians requesting assistance in evaluating plaintiff's claim. Plaintiff argues "[w]ithout that letter neither Plaintiff nor the Court is able to determine whether the letter provided information that was foolish, misleading, leading on suggestions of a certain response." Pl's. Reply Memo. in Supp. of Pl's. Mot. for Summ. J. at 4-5, n.4. MetLife responds that the letter was just a single-page referral form containing questions which Dr. Jares repeated in his evaluation.

In addition, plaintiff asserts that on November 26, 2004, plaintiff's counsel requested a copy of plaintiff's claims file from MetLife. The copy counsel received did not contain critical documents that were later provided to counsel by MetLife's attorney during the course of discovery. The missing documents were some medical records and log notes. The cover letter accompanying the copy of the record refers only to medical records and outgoing correspondence, and does not reference log notes. Plaintiff asserts that MetLife carefully chose its words to cover up the existence of those records. Plaintiff contends that the danger in MetLife's failure to provide the entire file is that plaintiff's attorney might not have taken the case.

MetLife responds that its notes indicate it provided a complete copy of the file to plaintiff's counsel, and that any documents that were missing was due to an inadvertent mistake. At the time plaintiff's counsel requested the file, MetLife had already issued its final decision, so none of the documents were needed for any appeal. Furthermore, MetLife's counsel provided a complete copy of the file well in advance of the cross-motions for summary judgment.

Page 12 - OPINION AND ORDER

First, I find that MetLife's failure to keep the referral letter to Elite Physicians is a "minor irregularity" as opposed to evidence of bad faith. <u>Abatie</u>, 458 F.3d at 972.

Second, the timing of MetLife's failure to provide all requested documents is determinative of whether the violation to provide a full copy of the file is flagrant enough to alter the standard of review. Here, the decision was issued long before plaintiff's request for the file was made. Furthermore, MetLife's counsel provided a complete copy of the file, well before summary judgment. While plaintiff's counsel's argument is compelling–that review of the full file is critical to a decision about whether to represent the client– MetLife's failure to turn over the full file did not alter the relationship between plaintiff and her employer or MetLife. Moreover, the error was realized and corrected in time for this action to proceed with plaintiff having the benefit of the full file. Finally, it is too big a leap to accept that the cover letter accompanying the record demonstrates that MetLife purposefully left the log notes out of the copy presented to plaintiff's counsel simply because no reference to the log notes was made in the letter. This conclusion is buttressed by the fact that some medical records were also missing. I conclude that the error is not a violation flagrant enough to alter the standard of review.

    D.    <u>Use of Elite Physicians</u>

MetLife sent plaintiff's records to Elite Physicians Ltd, a company that provides "evidence-based medical solutions for the insurance, managed care, legal, and medical industries." Plaintiff claims the company is not an independent reviewer of claims, and furthermore that the company should have sent her to an independent medical examiner ("IME").

Plaintiff also points out the administrator did not alert plaintiff that it had sent her records to the company, and did not provide her with a copy of the company's report until six months

after the final denial of her claim.  As a result, plaintiff had no opportunity to rebut the report. Indeed, in response to the administrator's question about what information is lacking to support functional limitations, Elite Physicians responded that there were no recent neurological or neuropsychological reports but, rather than requesting the information from plaintiff, MetLife denied the claim.  In addition, the claims administrator did not send plaintiff's entire file to Elite Physicians.  Her initial hospital record and the accompanying initial MRI were not provided. Finally, plaintiff claims the report served as a new reason, or at least new evidence, supporting denial of her claim, and she should have been allowed to address the evidence.

MetLife responds that Dr. Jares concluded only that plaintiff did not provide sufficient information that her syndrome had affected her functionality, not that plaintiff did not suffer from the syndrome at all.  MetLife is entitled to rely on its own physicians over those of a claimant's treating physician.  Taft v. Equitable Life Ins. Soc., 9 F.3d 1469, 1473 (9th Cir. 1993). Furthermore, courts have held that it is not an abuse of discretion to fail to obtain an IME.  Litt v. Paul Revere Life Ins. Co., 2006 WL 1095847 (N.D. Cal. 2006).  MetLife also argues that Elite Physicians did not offer a "new reason" for denying plaintiff's claim.

There is no evidence that Elite Physicians did not provide an independent review of the file, and there is no requirement that plaintiff be notified when her file is sent out for an independent review.  The Plan specifically permits MetLife to "consult with a health care professional."  Somervell Decl., Ex. B at 43.  I do note that I am bothered by the fact that plaintiff was not given a copy of the report until six months after it was issued and that she did not have an opportunity to respond to it.  Nevertheless, in this case, where the report provided no new reason to reject plaintiff's claim, I do not find this violation to be flagrant enough to alter the

Page 14 - OPINION AND ORDER

standard of review. Finally, plaintiff does not explain how Elite Physicians' conclusion would have been different had it been sent the initial hospital record and MRI. Accordingly, this is not a factor that affects the standard of review.

III.     Review of Plaintiff's Claim

Since MetLife did not obtain medical records from all of plaintiff's physicians, and since it neglected to "set[] forth in a manner calculated to be understood by the claimant . . . [t]he specific reason or reasons for the denial," it violated provisions of ERISA and of the Plan. As a result, MetLife committed procedural errors that are sufficiently egregious to warrant de novo review.

In addition, since "the administrator did not provide a full and fair hearing, as required by ERISA, 29 U.S.C. § 1133(2), the court must be in a position to assess the effect of that failure and, before it can do so, must permit the participant to present additional evidence." Abatie, 458 F.3d at 973. As a result, I will consider the extra-record material plaintiff submitted as it is necessary to conduct an adequate de novo review.

Because the parties focused their briefing on the standard of review rather than on the merits of plaintiff's claim, I request additional briefing. There is no need to re-submit the record or the extra-record evidence plaintiff already submitted. The parties should explain how plaintiff does or does not meet the disability criteria in the Plan.[3] Unless the parties agree to a staggered

---

[3]MetLife requests that any award of benefits to plaintiff be offset by plaintiff's workers' compensation and Social Security. If I find that plaintiff is disabled under the terms of the Plan, I will remand the claim to the administrator for payment pursuant to the terms of the Plan. If the administrator seeks an offset, plaintiff may challenge that decision administratively.

Page 15 - OPINION AND ORDER

briefing schedule, the parties are directed to submit one brief each, of no more than ten pages, by January 22, 2007.

## CONCLUSION

For the foregoing reasons, I grant plaintiff's motion for summary judgment (#33) in part, and deny MetLife's motion (#27). Additional proceedings are necessary to determine whether plaintiff meets the definition of disability under the Plan.

IT IS SO ORDERED.

Dated this ____13th_____ day of December, 2006.

                                                       /s/ Garr M. King
                                                     Garr M. King
                                                     United States District Judge